[Touart v. Yellow Pine Lumber Co.]

# Touart *v.* Yellow Pine Lumber Co.

*Action for Breach of Contract.*

1. *'Action for breach of contract; fatal variance between allegations of complaint and proof.*—In an action to recover damages for the breach of a contract, where the contract, as alleged in the several counts of the complaint, was one of sale by a lumber company of one thousand or, at the option of plaintiff, two thousand, cords of slabs, or of a sufficient quantity of the slab production of defendant's mill to fill a contract made or to be made by plaintiff with a third party, for one or two thousand cords of slabs, at plaintiff's option, and the evidence adduced on the trial shows that the contract between plaintiff and defendant was for the entire slab output of the latter's mill, there is a fatal variance between the *allegata* and the *probata*, precluding plaintiff's recovery, and which will authorize the court, on proper motion and request of defendant, to exclude all the evidence introduced and to give the general affirmative charge in favor of defendant.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. W. S. ANDERSON.

This was an action brought by the appellant, Stephen Touart, doing business under the name of the Mobile & Tuscaloosa Coal & Transportation Company, against the Yellow Pine Lumber Company, a corporation, and sought to recover damages for the alleged breach of a contract. The complaint contained six counts. These counts, so far as they set out the cause of action and relate to the contract, the breach of which was complained of, were as follows: "That the defendant should supply and sell and deliver to said coal company, at defendant's lumber mill on One Mile creek in Mobile county, Alabama, and that said coal company should buy and accept of defendant at said place, the out-put of the slabs of defendant's said mills as long as the same would be needed to carry out a contract to be immediately made by the plaintiff, as a partner in said coal company, on behalf of said coal company, to furnish 2,000 cords of slabs

to the Mobile Ice Company. That the price agreed upon between said coal company and defendant for said slabs to the quantity stated was 20 cents per cord."

The contract alleged in the second count is: "That the defendant should sell and deliver to said coal and transportation company, at defendant's mill on One Mile creek, Mobile county, Alabama, and the said coal and transportation company should buy and accept of defendant, at that point, the out-put of the defendant's mill at the agreed price of 20 cents per cord as long as the same were needed to carry out a contract then to be made by the said coal and transportation company to furnish one thousand, and, at said coal and transportation company's option two thousand, cords of slabs to the Mobile Ice Company."

The contract alleged in the third count is: "The defendant should sell and deliver to said coal and transportation company, at the mill of the defendant, situated on One Mile creek, Mobile county, Alabama, and that the said coal and transportation company should buy and accept of the defendant any quantity of slabs at 20 cents per cord which said coal and transportation company might require and order of defendant for the purpose of filling a contract which said coal and transportation was to make with the Mobile Ice Company to furnish said ice company 2,000 cords of slabs."

The contract set out in the fifth count is: "Defendant agreed to sell to said company at defendant's mill on One Mile creek, Mobile county, 2,000 cords of slabs at 20 cents per cord, and said company agreed to buy and send for and accept the same at that price."

The sixth count of the complaint was upon an open account.

The defendant demurred to the first, second and third counts of the complaint, which demurrers were sustained by the court. It is unnecessary to set out these demurrers in detail. To the remaining counts of the complaint, the defendant pleaded the general issue.

The defendant did not introduce any evidence, but upon the close of the plaintiff's case, the defendant moved the court to strike out the evidence inrtoduced by the plaintiff, upon the following grounds: 1st. There

is a variance between the proof and the complaint; and, 2d, because the contract sued on, as set forth in the complaint, was indefinite and terminable by either party at any time. The court sustained this motion, ruled out all the plaintiff's evidence, and at the request of the defendant gave the general affirmative charge in its behalf. To each of these rulings the plaintiff separately excepted. There were verdict and judgment for the defendant. Thereupon the plaintiff made a motion for a new trial, upon the ground that the court erred in its rulings upon the evidence, and the giving of the general affirmative charge in favor of the defendant. This motion was overruled and the plaintiff duly excepted. The plaintiff appeals and assigns as error the rulings of the trial court to which exceptions were reserved.

McALPINE & JONES, for appellant.—The trial court erred in ruling out plaintiff's evidence and giving the general affirmative charge for the defendant. The evidence of Stephen Touart made out plaintiff's case; proved a valid contract, and one that was binding on defendant.—*Sheffield Furnace Co. v. Hull Coal & Coke Co.*, 101 Ala. 446; 8 Am. & Eng. Ency. of Law, (2d ed.), p. 591 and note 1; *Brigham & Co. v. Carlisle*, 78 Ala. 243; and Vol. 1 of Keener's Selections (*Great N. R. R. Co. v. Williams*), p. 396, which latter case is on all fours with the case at bar; 1 Beach on Contracts, p. 114, § 89; Clark on Contracts (Hornbrook), pp. 170-171; *Troy Fertilizer Co. v. Logan*, 96 Ala. 619; *Cherry v. Smith*, 22 Tenn. 19; 39 Am. Decisions, 150. An agreement by one party to deliver as many of certain articles as the other should wish, becomes a binding contract as soon as the other has named the quantity he will take.—*Keller v. Ybarru*, 3 Cal. 147; *Blaney v. Hoke*, 14 Ohio St. 292.

GREGORY L. & H. T. SMITH, *contra.*—No recovery could have been had under any count of the complaint. The contract was to take the out-put, not a part of it, and was indivisible.—7 Am. & Eng. Ency. of Law, 96 and note; *Watson v. Kirby*, 112 Ala. 442. Before a recovery could be had for a breach of contract, plaintiff would have had to prove that he was ready, willing and able to

take the whole out-put, and this he failed to do.—Clarke on Contracts, p. 66; *Anderson v. Grath,* 1 Stewart 160; *Rick v. Hall,* 4 Port. 175; *McGehee v. Hill,* 1 Minor 144.

There was a variance between the pleadings and proof. When such a variance exists no recovery can be had.— *Phillips v. Amer. Guano Co.,* 110 Ala. 542; *Cobb v. Keith, Smith & Co.,* 110 Ala. 618; *Harold v. Jones,* 97 Ala. 637; *Highland Ave. & Belt R. R. Co. v. Winn,* 97 Ala. 306; *L. & N. R. R. Co. v. Markee,* 103 Ala. 160; *Wilkinson v. King,* 81 Ala. 186; *A. G. S. R. R. Co. v. Thomas & Son,* 83 Ala. 345; *A. G. S. R. R. Co. v. Goodfellow,* 83 Ala. 201; *Kennedy v. R. R. Co.,* 74 Ala. 430; *Conrad v. Gray,* 109 Ala. 134; *Stewart v. Tucker,* 106 Ala. 323.

McCLELLAN, C. J.—On and before April 5th, 1899, Stephen Touart and William McDonald (referred to in Touart's testimony as Willie) were partners in the coal and wood business in Mobile under the name of Mobile & Tuscaloosa Coal & Transportation Company. On that day or just previously it is claimed they made a contract with the Yellow Pine Lumber Company through its secretary and treasurer, D. J. McDonald, a brother of William McDonald of said partnership, to take slabs from said company's saw mill at 20 cents per cord. Some days after April 5th, 1899, Touart purchased the interest of his partner said William (or "Willie") McDonald in said business and in said alleged contract, and this action is prosecuted by him for its alleged breach. As to what that contract was the evidence in its most favorable tendencies for the plaintiff goes to show the following state of facts: Touart on April 5th (or two days before, it is not clear which) went to see D. J. McDonald, defendant's secretary and treasurer, and said to him: "Dan, I came down here to see you. Willie [McDonald, plaintiff's then partner] tells me that you have sold him the output of this mill at twenty cents per cord for your slabs, and I want to know if it is so, and he says, 'I did say so.' I said, 'the reason I come to you I am going to make a contract with the Mobile Ice Company for one thousand cords with the privilege of two

thousand, and I want to know whether you have done this or not before I go into this contract,' and he says, 'I did,' and he says, 'unless there has been other arrangements made, and I don't think they have because if they were they would have to come through me, but I will see Mr. Miles, [the president of the Lumber Company]. I left him and went on down, and two days after I met him on the northeast corner of Royal and St. Francis, and I said, 'Mr. Dan, did you see Mr. Miles?' He said, 'I didn't, but I am satisfied everything is all right because if it was not it would have to come through me,' and I said, 'well, if that is the case, I am going to make arrangements for the slabs;' he said, 'all right, go ahead.' " Touart thereupon made arrangements with the Mobile Ice Company to sell it one thousand with the privilege of selling it two thousand cords of slabs. Defendant's mill was located on One Mile Creek, in or near Mobile, and slabs were to be taken by Touart at the mill. The mill was thereafter operated and there was sufficient output of slabs by it to supply Touart two thousand cords or more. Within six or seven weeks after the last conversation detailed above between Touart and McDonald about one hundred and twenty-six cords of slabs were taken by Touart, at twenty cents per cord and delivered to the Ice Company, and the defendant company received payment therefor from Touart. Then the defendant refused to make further delivery under the alleged contract, but offered to continue delivering at 65 cents per cord which proposition Touart declined. The mill has all along been in operation putting out slabs and for aught that appears will so continue indefinitely. Upon these facts it is clear to us that the only contract entered into between the defendant and plaintiff's firm was that made between McDonald acting for the defendant and Touart's partner, denominated "Willie" in his testimony, acting for plaintiff's firm, and referred to by Touart when he first approached McDonald in his statement then made that "Willie tells me that you have sold him the output of this mill at twenty cents per cord for your slabs." To this McDonald then assented and afterwards confirmed. All else that passed between Touart and McDonald was on the part of Touart an ex-

planation of his desire to be fully assured that the Lumber Company through McDonald had sold the slab output of the mill to Willie, and on the part of McDonald the giving of the assurances Touart desired; Touart saying in effect to McDonald if you have sold your slab output to Willie I can and will make a contract to supply two thousand cords to the Mobile Ice Company, and McDonald in effect saying finally to him: It is all right, you can rely upon my company's having sold the output of the mill to Willie. Go ahead. McDonald never once said anything about selling to plaintiff's firm one thousand cords of slabs or two thousand cords, but referred throughout to a sale of the whole output of the mill. And Touart never once inquired of McDonald whether he had sold to his partner one thousand or two thousand or any other definite number of cords of slabs, but his inquiry throughout was whether he had sold the output of the mill. And there was, we repeat and conclude, on the tendencies of the evidence most favorable to the plaintiff, no contract for any definite quantity of slabs, but only an agreement on the part of the Lumber Company to sell to Touart's firm the entire slab production of its mill. The exigencies of this appeal do not require us to determine whether this agreement was void for indefiniteness. It will suffice for all present purposes to say that this agreement, the only one the evidence tended to establish, is not the agreement counted on in the complaint; and that the sole agreement counted on was one of sale of one thousand or, at the option of plaintiff's firm, two thousand cords of slabs, or of a sufficient quantity of the slab production of defendant's mill to fill the contracts with the Ice Company for one thousand, or, at plaintiff's option, two thousand cords of slabs, and that there was no evidence tending to support either form of the agreement as set up in the complaint. Here then was a fatal variance between the averments of the complaint and the evidence, an utter failure to prove the contract averred, a failure to adduce any evidence tending to prove it; and the trial court did not err in excluding all the evidence and giving the affirmative charge for the defendant.

[Walker, Exec. v. Clifford *et al.*]

It is unnecessary to inquire whether the first, second and third counts of the complaint were open to the demurrers which the trial court sustained. With those counts continuing in the case, the result would have been the same: The general charge would have been proper against a recovery upon them. So, too, it is not necessary to consider the rulings on the competency of testimony. Had all the rulings invoked in this connection been favorable to the plaintiff, he still would have had no evidence before the jury tending to prove the contract laid in his complaint.

Of course, the foregoing conclusions necessitate our concurrence in the trial court's ruling on the motion for a new trial.

Affirmed.